UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KRISTINA KIEHLE,

        **Plaintiff,**

  -v-                                                  3:09-cv-1259

COUNTY OF CORTLAND;
KRISTEN MONROE, in her individual
capacity; MAUREEN SPANN, in her
individual capacity; and TIFFANIE PARKER,
in her individual capacity,

        **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

## DECISION & ORDER

**I.    INTRODUCTION**

Plaintiff commenced this action asserting claims of First Amendment retaliation following Plaintiff's discharge from her position as a probationary caseworker for the County of Cortland Department of Social Services. Compl., dkt. # 1. Defendants move for summary judgment seeking to dismiss the case in its entirety. Dkt. # 21. Plaintiff has opposed the motion. Dkt. # 22. For the reasons that follow, the motion is granted.

**II.    STANDARD OF REVIEW**

On a motion for summary judgment the Court must construe the properly disputed facts in the light most favorable to the non-moving party, see Scott v. Harris, 127 S. Ct. 1769, 1776 (2007), and may grant summary judgment only where "there is no genuine

1

issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  A party seeking summary judgment bears the burden of informing the Court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1).  If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  While the Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in his favor, Abramson v. Pataki, 278 F.3d 93, 101 (2d Cir. 2002), a party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings.  Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994); Fed. R. Civ. P. 56(c).  Summary judgment will be granted when it is apparent on the facts presented that no rational trier of fact could find in favor of the nonmoving party because evidence supporting the essential elements of the non-movant's claim is lacking.  FED. R. CIV. P. 56(c); Celotex Corp., 477 U.S. at 322.

**III.   BACKGROUND**[1]

Plaintiff Kristina Kiehle was employed as a caseworker by the County of Cortland Department of Social Services ("DSS") from April 7, 2008 until August 18, 2008.  During this time she was considered a probationary employee.  This case arises from Plaintiff's testimony on August 18, 2008 at a New York State Family Court hearing to determine whether a child, removed from the home on a neglect petition, could be returned to her home.

Plaintiff worked as a caseworker in DSS's foster and preventive care unit.  In this capacity, Plaintiff worked with families who had children removed from their homes, or who were in danger of being removed.  Plaintiff had a caseload of approximately ten (10) families.  The instant case concerns a family that was part of Plaintiff's caseload.

When Plaintiff was assigned as a caseworker for a family, she was required to meet with her supervisor to learn about the case, to review the existing case file, and to speak with the supervisor about the progress of the case.  Plaintiff's direct supervisor was Defendant Maureen Spann.  A caseworker was required to maintain in each file caseworker progress notes documenting the caseworker's work with a family, and up-to-date Family Assessment Service Plans (FASP).   Plaintiff admits, however, that she was unable to keep up on her progress notes although Plaintiff testified at her deposition that she kept her progress notes up to date "as best I could . . . as time permitted, as best I could."  Plaintiff did not recall at her deposition if her progress notes were put in the files within a month of the events that were to be recorded, or whether her FASPs were up to

---

[1] The Background facts are taken from the Plaintiff's Response to Defendants' Statement of Material Facts, dkt. # 22-6.

3

date.

As a new caseworker, Plaintiff was required to attend the Child Protective Services Core Training program. Prior to attending the Core Training Program, and prior to Plaintiff's Family Court testimony which is the focus of this case, it was Spann's opinion that there was a "50/50 chance" that Plaintiff would be terminated because of poor work performance. Spann asserts that there had been talk of terminating Plaintiff but Spann advocated to give Plaintiff a chance after the completion of Core Training to see if Plaintiff could "pull it together."

With regard to the particular family in issue in this case, Plaintiff visited the family, met with a mental health counselor and the mother in June of 2008, and transmitted to Spann the mother's request to temporarily place the daughter into DSS custody and leave the son at home. Spann denied the request. Plaintiff also met with the family several more times in June and July 2008 while the son was in DSS custody on a Person In Need of Supervision ("PINS") placement, and the daughter was still at home. Plaintiff was aware that the son was behaving much better while in the foster home while the daughter remained a problem living at home with the mother.

On the Friday before the August 18, 2008 hearing, Plaintiff returned from Core Training and talked to Spann. Spann advised Plaintiff that the subject family's daughter had been removed from the home through a neglect petition filed by Spann while Plaintiff was at Core Training. Plaintiff was also advised that a Family Court hearing would be held at 9:30 on the following Monday (August 18) on the mother's petition to return the daughter to her home. Spann told Plaintiff to attend the hearing, that Spann would be testifying for the Department, and that Plaintiff's job would be to take notes at the hearing.

Plaintiff acknowledges that, before the hearing, she did not review the progress notes from the time that she was at the Core Training program during which the daughter was removed from the home.

At the hearing, Plaintiff was identified by the mother's attorney as a witness for the mother, and Plaintiff was excluded from the courtroom until she was called to testify. When she was called to the stand, Plaintiff testified that she began as a caseworker in the DSS's foster and preventive care unit on April 7, 2008.  She further testified that, despite the family being part of her active caseload, she: (a) had not read all of the prior caseworker's progress notes and could not recall how many times the prior caseworker had recorded that the son was in the household alone when his behavior was out of control; (b) acknowledged that it was the mother's idea to have the daughter placed in DSS care; (c) was unaware how long Liberty Resources, a parenting skills program, had been working with the mother on parenting skills; (d) did not know whether there had been any psychological or medical diagnosis made for either of the children; and (f) had not seen the DSS neglect petition that prompted the daughter's  removal.  Nevertheless, Plaintiff gave the opinion that the mother was not neglectful of her children, and that the mother was able to provide adequate supervision of the children.  Despite Plaintiff's testimony, the Family Court denied the mother's petition to return the daughter to the home.

After the hearing, Spann advised her supervisor, Defendant Tiffany Parker, of what occurred in Family Court.  Spann was of the belief that, except in "really extraordinary circumstances," a caseworker should not testify for anyone other than the DSS without first being subpoenaed, and that anytime a caseworker was called to testify in a Family

5

Court proceeding about the substance of the caseworker's employment duties, the caseworker was to first discuss the testimony with a supervisor to ensure that improper confidences would not be divulged and so that the Department would know the substance of the caseworker's testimony.  Spann further believed that Plaintiff's testimony, without first discussing the matter with a supervisor or fully reviewing the file and the circumstances of the family, were examples of Plaintiff's poor judgment.

Parker then met with DSS Commissioner Kristen Monroe, DSS Attorney Ingrid Olsen-Tjensvold, and Spann.  Olsen-Tjensvold discussed the court proceedings that morning, indicating that Plaintiff had testified without reviewing the petition, without being subpoenaed, and without discussing her testimony with a supervisor.  Olsen-Tjensvold felt that Plaintiff had testified to matters that were beyond her scope of knowledge.

There was great concern among the individuals in the meeting about Plaintiff's work performance.  Parker had to leave the meeting early and, at the point that she left, no conclusions had been reached as to the continuation of Plaintiff's employment.  Before leaving, Parker expressed her opinion that, based upon the totality of circumstances, Plaintiff "should not pass probation."

Monroe was of the opinion that Plaintiff's conduct that day represented poor judgment because she did not consult with her supervisor or the DSS attorney prior to testifying.   After the meeting, Monroe consulted with Annette Barber, the Personnel Officer, and Scott Schrader, the County Administrator, to clarify the procedures and acceptable bases for discharging a probationary employee.

Later that day, Monroe met with Kiehle and told her she was not passing her probation as a caseworker.   Monroe stated to Plaintiff that the DSS relies on caseworkers

6

to assess case safety and risk, and to manage families with those concerns "first and foremost."  She further stated that if the DSS files a neglect petition it is indicating that the DSS has significant concerns about the well being of a child and that, for a caseworker to not understand those issues and be willing to testify for opposing counsel without having spoken to anyone at the DSS, constituted negligence.  Monroe told Plaintiff that  she would be paid through August 25, and that she had an opportunity to contact Annette Barber if she needed any further explanation.  The instant action followed.

**IV.     DISCUSSION**

Defendants argue that Plaintiff has failed to demonstrate that she engaged in speech protected by the First Amendment. The Court agrees.

A public employee's speech may be constitutionally protected only if she has spoken out as a citizen, not as an employee, on matters of public concern, rather than on matters of personal interest, and the state lacks an adequate justification for treating the employee differently from any other member of the general public. See Garcetti v. Ceballos, 547 U.S. 410, 418 (2006); Pickering v. Board of Educ., 391 U.S. 563, 568 (1968);  Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008);  Morris v. Lindau, 196 F.3d 102, 110 (2d Cir.1999).  "If the court determines that the plaintiff either did not speak as a citizen or did not speak on a matter of public concern, 'the employee has no First Amendment cause of action based on his or her employer's reaction to the speech' . . . ."  Sousa v. Roque, 578 F.3d 164, 170 (2d Cir. 2009) (quoting Garcetti, 547 U.S. at 418).

7

### a.  Speech as a Citizen or Public Employee?

Garcetti constituted a refinement of First Amendment jurisprudence in the context of actions, like the instant one, that involved First Amendment workplace retaliation claims by public employees, holding that the First Amendment does not protect statements by public employees, even on matters of public concern, if those statements were made pursuant to the public employee's official duties. Garcetti, 547 U.S. at 420.[2]  The inquiry into whether a public employee spoke "pursuant to" her official duties is an objective and practical one, and the employee's official job duties must neither be defined too narrowly nor limited to a formal job description.  See Garcetti, 547 U.S. at 424-25; Weintraub v. Board of Educ. of City School Dist. of City of New York, 593 F.3d 196, 202 (2d Cir. 2010).[3]  "The Garcetti Court defined speech made 'pursuant to' a public employee's job duties as 'speech that owes its existence to a public employee's professional responsibilities.'" Weintraub, 593 F.3d at 201 (quoting Garcetti, 547 U.S. at 421).

In interpreting Garcetti, the Second Circuit has concluded that "under the First Amendment, speech can be 'pursuant to' a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer." Weintraub, 593 F.3d at 203.  Rather, speech is "pursuant to" a public employees official duties if it was "part-and-parcel of [her] concerns about [her]

---

[2] ("[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.")

[3] (explaining that "[f]ormal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes" (quoting Garcetti, 547 U.S. at 424–25))

8

ability to properly execute [her] duties." Id. (citation and interior quotation marks omitted). That is, if the speech was a "means to fulfill, and undertaken in the course of, performing [the public employee's] primary employment responsibility," then it was pursuant to the public employee's official duties. Id.

Plaintiff's primary employment responsibility as a caseworker in DSS's foster and preventive care unit was to assess and report on the safety and well being of the children in the families making up her caseload. Plaintiff's testimony at the Family Court hearing concerned her observations of, and opinions about, the circumstances of a family that was part of her caseload. Thus, Plaintiff testified to the subject matter that formed the core responsibility of her public employment position. Plaintiff's testimony at the Family Court hearing concerning the safety and well-being of the subject-child in the family home "owe[d] its existence to [Plaintiff's] professional responsibilities." Garcetti, 547 U.S. at 421. The testimony "was part-and-parcel of [Plaintiff's] concerns about [her] ability to properly execute her duties." Weintraub, 593 F.3d at 203. That is, the speech was a "means to fulfill, and undertaken in the course of, performing [Plaintiff's] primary employment responsibility" as a DSS foster and preventive care unit caseworker even though her testimony was not required by, or sought from, the employer. Id.

In determining whether a plaintiff spoke as an employee or a citizen, the Court may also consider whether the form of the speech had a "relevant citizen analogue," or "channel of discourse available to non-employee citizens." Id. at 203, 204. Although not a dispositive factor, id. at 204, the existence of a citizen analogue may serve as a proxy "for the controlling question of what role the speaker occupied when [she] spoke." Williams v. County of Nassau, --- F. Supp.2d ----, 2011 WL 1240699, at *4 (E.D.N.Y. March 30,

9

2011)(interior quotation marks and citation omitted).  This inquiry focuses on whether a non-employee citizen would have the same opportunity to convey the speech through the channel utilized.  See Williams, 2011 WL 1240699, at *7.[4]

While any person may give testimony at a Family Court hearing, Plaintiff's testimony was relevant *only* because of the access she gained through her position as a caseworker.   Were it not for this access, it is unlikely that her  testimony would have been sought.  Thus, the channel of discourse utilized by Plaintiff  - the offering of an opinion about the suitability of a parent in a Family Court return of child hearing - would not be available to non-employee citizens.

Based upon these reasons, the Court concludes that Plaintiff's testimony at the August 18, 2008 Family Court hearing was speech made pursuant to her official duties and was not made as a citizen.  Thus, there is no First Amendment protection for Plaintiff's speech.

### b.  Speech on a Matter of Public Concern?

Moreover, Plaintiff's speech was not on a matter of public concern, but rather was on an issue of isolated significance to the family that was the subject of the Family Court proceeding in which Plaintiff testified.  The speech lacked the "broader public purpose"

---

[4] (finding that the plaintiff was not speaking as a citizen based, in part, on that fact that "[w]hile citizens may write letters to, or request meetings with, the Deputy County Executive, none would have the kind of access to [the Deputy County Executive] that Williams had as Executive Director of the [Nassau County Civil Service Commission ]")(citing  D'Olimpio v. Crisafi, 718 F. Supp.2d 340, 354 (S.D.N.Y.2010) (noting that plaintiffs' statements were "made in a manner that would not be available to a non-public employee citizen"); Medina v. Dep't of Educ. of N.Y., 2011 U.S. Dist. LEXIS 5194, at *8–9 (S.D.N.Y. Jan. 14, 2011)(plaintiff guidance counselor who complained to principal, union representative, and students' parents "was only in a position to raise these concerns to these specific people as a direct result of his position as a guidance counselor"); Heffernan v. Straub, 612 F. Supp.2d 313, 326 (S.D.N.Y. 2009) (holding plaintiff made speech pursuant to his official duties when "an ordinary citizen not employed by the Fire Bureau would not ... have the opportunity to convey [his opinion] through the channels that he utilized.")) 

10

necessary to afford it protection under the First Amendment.  See Ruotolo v. City of New York, 514 F.3d 184, 189 (2d Cir. 2008);  Lewis v. Cowen, 165 F.3d 154, 63-64 (2d Cir. 1999)).  Accordingly, the claims can be dismissed on this basis alone.  Garcetti, 547 U.S. at 418;  Sousa, 578 F.3d at 170.

### c.  Pinkering & Mt. Healthy

Finding that Plaintiff's speech is not protected by the First Amendment, there is no basis to determine whether Defendants have asserted a viable defense under Pickering v. Bd. of Educ., 391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed.2d 811 (1968), or under  Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287, 97 S. Ct. 568, 50 L. Ed.2d 471 (1977).

### V.   CONCLUSION

For the reasons discussed above, Defendants' motion for summary judgment [dkt. # 21] is **GRANTED**, and all claims in this matter are **DISMISSED.**

**IT IS SO ORDERED**

DATED:  July 8, 2011

*[signature]*
Thomas J. McAvoy
Senior, U.S. District Judge